2025R00665/AMT/JS

**FILED**

AUG 27 2025

4:45 PM  JD

AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Zahid N. Quraishi, U.S.D.J. |
| v. | : | Crim. No. 25-520 |
| JOSE PENA and<br>JASON JARAMILLO | : | Count 1<br>18 U.S.C. § 1349<br>(Conspiracy to Commit Wire Fraud) |
| | : | Counts 2-4<br>18 U.S.C. §§ 1343 and 2<br>(Wire Fraud) |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges as follows:

### COUNT 1
### (Conspiracy to Commit Wire Fraud)

### INTRODUCTION

1. From at least as early as in or around April 2018 through at least as late as in or around June 2024, the defendants, JOSE PENA ("PENA") and JASON JARAMILLO ("JARAMILLO"), conspired with each other and others to defraud Williams-Sonoma, Inc. ("WSI") and "Company-1," a major transportation and logistics company and a WSI contractor, of millions of dollars through a fraudulent billing and kickback scheme (the "Conspiracy"). During the Conspiracy, PENA owned, operated, and controlled trucking firms that contracted with Company-1 to provide last-mile delivery services to either or both of WSI and Company-1.

JARAMILLO was a WSI manager and knowingly and intentionally approved and facilitated millions of dollars in fraudulent payments from WSI to PENA for services that PENA's firms had not actually provided. As inducement, and in exchange, for those fraudulent payments, PENA knowingly and intentionally made significant kickback payments in money and gifts to JARAMILLO and other conspiring employees of Company-1.

### Relevant Background

2. At times relevant to this Indictment:

   a. Williams-Sonoma, Inc. ("WSI") was a retailer of products for the home headquartered in San Francisco, California. WSI sold products under several brands, including Williams-Sonoma, Pottery Barn, West Elm, Rejuvenation, and Mark and Graham. WSI sold merchandise to consumers via websites and direct-mail catalogs, and operated more than 500 retail stores in the United States, Canada, Australia, and the United Kingdom.

   b. WSI maintained distribution centers throughout the United States that were responsible for handling last-mile deliveries of WSI products to customers within each center's surrounding geographic area. "Last-mile" delivery was the final step in the delivery process, when an item was transported from a distribution center to the customer's doorstep. WSI maintained one such distribution center in Cranbury, New Jersey (the "Cranbury Facility"), which was responsible for handling last-mile deliveries of WSI goods to customers within New Jersey and the New York City metropolitan area.

  c. Company-1 was a national transportation and logistics company that was headquartered in Miami, Florida and operated throughout the United States, including in New Jersey.

  d. Company-2 was a trucking firm based in New Jersey.

  e. WSI contracted outside firms, including Company-1 and Company-2, to provide last-mile delivery services of WSI merchandise to customers from the Cranbury Facility.

  f. Company-1, in turn, contracted multiple smaller trucking firms to complete these last-mile deliveries (the "Company-1 Subcontractors").

  g. Defendant JOSE PENA ("PENA") was a resident of New Jersey. PENA owned, operated and controlled trucking firms (each a "PENA Firm"), including "PENA Firm-1" and "PENA Firm-2," that contracted either with Company-1 as Company-1 Subcontractors (as with PENA Firm-1) or directly with WSI (as with PENA Firm-2) to provide last-mile delivery services for WSI.

  h. Defendant JASON JARAMILLO ("JARAMILLO") was a resident of New Jersey. JARAMILLO worked for WSI as a regional director of operations. In that capacity, JARAMILLO oversaw the Cranbury Facility, including assignment of deliveries to WSI's contracted trucking firms. JARAMILLO was also responsible for reviewing and approving payments to those firms for those services.

  i. Cintia Elaxcar ("Elaxcar") was a resident of New Jersey. ELAXCAR worked as a billing and dispatch manager for Company-1 and was seconded to the Cranbury Facility.

j. Raymond DeLeon ("DeLeon") was a resident of New Jersey. DeLeon worked as an operations general manager for Company-1 at the Cranbury Facility.

k. Company-1 employees, including Elaxcar and DeLeon, working in New Jersey, would regularly submit or cause to be submitted to Company-1 billing requests for work done by the Company-1 Subcontractors, including PENA Firm-1. Those requests would then be transmitted electronically and in interstate commerce from Company-1 to WSI.

l. As part of his official duties, JARAMILLO was responsible for reviewing and approving requests for payment by WSI, including (1) those submitted by Company-1 for work done by Company-1 Subcontractors, including PENA Firm-1, and (2) those submitted by trucking firms that directly contracted with WSI, including Company-2 and PENA Firm-2. Once billing requests were approved by JARAMILLO, WSI paid the requesting entity in accordance with the approved requests for payment.

m. When Company-1 received payment from WSI for services provided by the Company-1 Subcontractors, Company-1 would then disburse payment to those entities based on the services they had provided.

## The Conspiracy

3.  From at least as early as in or around April 2018 through at least as late as in or around June 2024, in Middlesex County, in the District of New Jersey, and elsewhere, the defendants,

**JOSE PENA and<br>JASON JARAMILLO,**

did knowingly and intentionally conspire and agree with each other and others to devise a scheme and artifice to defraud and to obtain money and property from WSI and Company-1, by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, to knowingly transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Sections 1343.

## Goal of the Conspiracy

4.  The goal of the conspiracy was for PENA, JARAMILLO, Elaxcar, DeLeon, and others (the "Conspirators") to enrich themselves by (1) knowingly and intentionally causing WSI to make fraudulent payments to PENA for services PENA had not actually provided, and (2) PENA making kickback payments in money and gifts to JARAMILLO, Elaxcar, DeLeon, and other WSI and Company-1 employees as inducement, and in exchange, for causing those fraudulent payments to be made.

## Manner and Means of the Conspiracy

5.  It was part of the conspiracy that:

a.  The Conspirators comprised at least (i) employees both of WSI (including JARAMILLO) and of Company-1 (including DeLeon and Elaxcar) (the "Employee Conspirators") and (ii) PENA and certain of PENA's associates affiliated with the PENA Firms.

b.  Elaxcar, DeLeon, and other Employee Conspirators caused fraudulent billing requests to be submitted to WSI and Company-1 seeking payment to PENA for work that PENA's firm did not actually do. The fraudulent billing requests submitted as part of the conspiracy were, as the Conspirators knew and intended, materially false in numerous and varied respects. For example:

i.  In some instances, the Employee Conspirators submitted billing requests on behalf of PENA Firm-1 for deliveries that neither that firm nor any other company ever performed.

ii.  In other instances, Elaxcar submitted billing requests seeking payment to PENA for deliveries that Company-2, as opposed to PENA Firm-1, had actually completed (the "Double-Billing Fraudulent Requests"). In this way, WSI was defrauded into paying for these deliveries twice. The Conspirators defrauded WSI of more than approximately $3.5 million through this fraudulent method alone.

iii.  In still other instances, the Employee Conspirators inflated billing requests submitted on behalf of PENA Firm-1. For example, the contract between Company-1 and the Company-1 Subcontractors provided for additional

payment for deliveries that required an additional crew member and for deliveries that were especially difficult. In some instances, the Employee Conspirators knowingly and intentionally caused requests for additional payment to be submitted on behalf of PENA that falsely claimed that certain deliveries completed by PENA Firm-1 either involved an additional crew member, were especially difficult, or both.

        iv.    WSI asked Company-1 to maintain a certain number of trucks in reserve each day at the Cranbury Facility—so-called "standby trucks"—to handle deliveries in case a scheduled truck was unable to complete an assigned delivery. WSI would pay the firm providing those standby trucks for that service. JARAMILLO insisted, for no legitimate business reason, that standby trucks be exclusively assigned to PENA. And in some instances, JARAMILLO and other Employee Conspirators knowingly and intentionally caused requests for payment to be submitted to WSI in PENA's favor for more standby trucks than PENA was actually assigned on a given day.

        c.    As part of the Conspiracy, JARAMILLO knowingly and intentionally approved fraudulent billing requests despite knowing that they were materially false, thereby enabling those fraudulent payments to be made.

        d.    As a result of the Conspiracy, WSI made millions of dollars in fraudulently induced payments that were ultimately disbursed to PENA.

        e.    As inducement, and in exchange, for these fraudulent payments, PENA knowingly and intentionally made regular and substantial kickback payments in cash and gifts to JARAMILLO and other Employee Conspirators, including

Elaxcar and DeLeon. In addition to regular payments in cash, for example, PENA gave kickbacks to JARAMILLO in the form of a Rolex watch, New York Yankees playoff tickets, and a Chevrolet Tahoe. Similarly, PENA paid over approximately $435,000 in kickbacks to Elaxcar and over approximately $200,000 to DeLeon during the Conspiracy.

    f. After WSI and Company-1 discovered the Double-Billing Fraudulent Requests between in or around late 2020 and in or around early 2021, PENA and JARAMILLO continued the Conspiracy. For example, after WSI and Company-1 excluded PENA Firm-1 from further work at the Cranbury Facility as a result of that discovery, JARAMILLO, PENA, and other Conspirators arranged for a different PENA Firm—PENA Firm-2, in which PENA concealed his interest and control—to continue receiving such work. JARAMILLO did so knowing full well of PENA's interest and control in PENA Firm-2 and knowing full well that WSI had disallowed any further business with PENA. And through at least as late as in or around June 2024, PENA and JARAMILLO knowingly and intentionally caused further fraudulent billing requests to be submitted to and paid by WSI in favor of PENA Firm-2, amount to at least approximately $1 million in further losses by WSI.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4
## (Wire Fraud)

6. Paragraphs 1, 2, 4, and 5 of this Indictment are realleged here.

7. On or about the dates set forth below, in Middlesex County, in the District of New Jersey, and elsewhere, the defendants,

## JOSE PENA and
## JASON JARAMILLO,

did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property from WSI and Company-1 by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce from New Jersey, certain writings, signs, signals, and sounds, namely the Double-Billing Fraudulent Requests specified below, each constituting a separate Count of this Indictment:

| Count | Approximate Date of Initiation (On or About) | Description |
|---|---|---|
| 2 | August 29, 2020 | Elaxcar electronically sent a Double-Billing Fraudulent Request bearing invoice number ending in -42297 for approximately $445.06 in PENA's favor from the Cranbury Facility in the District of New Jersey to WSI in California. |
| 3 | September 3, 2020 | Elaxcar electronically sent a Double-Billing Fraudulent Request bearing invoice number ending in -68662 for approximately $445.06 in PENA's favor from the Cranbury Facility in the District of New Jersey WSI in California. |
| 4 | September 8, 2020 | Elaxcar electronically sent a Double-Billing Fraudulent Request bearing invoice number ending in -74636 for approximately $445.06 in PENA's favor from the Cranbury Facility in the District of New Jersey to WSI in California. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATION

Upon convictions of the offenses in violation of Title 18, United States Code, Sections 1349 and 1343 charged in Counts 1-4 of this Indictment, the defendants,

**JOSE PENA and
JASON JARAMILLO,**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the said offenses, and all property traceable thereto.

## SUBSTITUTE ASSETS PROVISION

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

11

the United States shall be entitled, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the above-described forfeitable property.

A TRUE BILL

_____
FOREPERSON

TODD BLANCHE
U.S. Deputy Attorney General

*Alina Habba / by permission RLW*
ALINA HABBA
Acting United States Attorney
Special Attorney

/s/ Andrew M. Trombly
_____
Andrew M. Trombly
Assistant United States Attorney

CASE NUMBER: 25-520 (ZNQ)

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

JOSE PENA and
JASON JARAMILLO

## INDICTMENT FOR

18 U.S.C. § 1349; 18 U.S.C. §§ 1343 and 2

A True Bill,

███████████████████

Foreperson

TODD BLANCHE
UNITED STATES DEPUTY ATTORNEY GENERAL

ALINA HABBA
ACTING UNITED STATES ATTORNEY
SPECIAL ATTORNEY

ANDREW M. TROMBLY AND JOSEPH STERN
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
973-645-2847