**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**JOSE PENA, *et al.*,**<br><br>Defendants. | Criminal Action No. 25-520 (ZNQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Jose Pena ("Pena") on June 23, 2026. (ECF No. 52.) Pena filed a Memorandum of Law in Support of his Motion, in which he principally argues that the Indictment against him should be dismissed because the Government violated the Speedy Trial Act ("STA") and the Appointments Clause. ("Moving Br.," ECF No. 52-1.) Defendant Jason Jaramillo ("Jaramillo") filed a Motion to Dismiss on June 24, 2026, in which he adopts and joins Pena's arguments related to the Appointments Clause. (ECF No. 53-3.) The Government filed an Opposition to the Motions. ("Opp'n Br.," ECF No. 58.) On August 5, 2026, Pena filed a Reply in support of Motion, only as to whether the Speedy Trial Act was violated. ("Reply I," ECF No. 60.) The next day, the Court held oral argument that was limited to the issue of whether the Government violated the Speedy Trial Act. (ECF No. 61.) On August 18, 2026, Pena filed a second Reply in support of his Motion on the issue of whether the Appointments Clause was violated and responding to questions raised at oral

argument. ("Reply II," ECF No. 65.) On August 24, 2026, Jaramillo filed a Reply in support of his Motion. (ECF No. 68.)

The Court has carefully considered the parties' submissions and the positions of counsel presented at oral argument. For the reasons set forth below, the Court will **DENY** Defendants' Motions. (ECF Nos. 52, 53.)

## I. BACKGROUND AND PROCEDURAL HISTORY

The Government alleges that Pena and Jaramillo engaged in a conspiracy to defraud Williams-Sonoma, Inc. ("WSI") and "Company-1," a major transportation and logistics company, of millions of dollars through a fraudulent billing and kickback scheme (the "Conspiracy"). (ECF No. 44 ¶ 1.) As alleged, Pena owned, operated, and controlled trucking firms that contract with Company-1 to provide "last-mile delivery" services (i.e., the final step in the retail delivery process to the customer). (*Id.*) Jaramillo was allegedly a manager of WSI and knowingly and intentionally approved and facilitated millions of dollars in fraudulent payments from WSI to Pena for services that Pena's firms had not actually provided. (*Id.*) In exchange for these fraudulent payments, Pena allegedly sent Jaramillo kickback payments in the form of money and gifts. (*Id.*)

On January 31, 2025, while Acting United States Attorney Vikas Khanna was leading the United States Attorney's Office, the Government obtained a complaint charging Pena with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. (ECF No. 1.) On February 5, 2025, Pena was arrested and had his initial appearance. (ECF No. 4.)

On February 6, 2025, the Honorable José R. Almonte, U.S.M.J. (the "Magistrate Judge"), signed a continuance order, which excludes for STA purposes all days from "the date of the[e] order through April 30, 2025." (ECF No. 9, at 2.) Thereafter, President Trump nominated Alina Habba ("Ms. Habba") to be the interim U.S. Attorney for the District of New Jersey.

On April 23, 2025, the Government emailed the Magistrate Judge's staff (the "April 23 Email") and attached a proposed continuance order (the "Proposed Continuance Order"). (Gov't Ex. A at 2.)[1] The Proposed Continuance Order was a "joint application" made by both the Government and Pena and requested that the Magistrate Judge enter an order finding that "the ends of justice are served by granting the continuance" and excluding the time from "the date of this order through July 30, 2025" for STA purposes. (*Id.* at 4.) It does not appear that the Magistrate Judge's staff responded to this email.

On April 28, 2025, the Government sent another email to the Magistrate Judge's staff to follow up on the Proposed Continuance Order and again did not receive a response. On May 15, 2025, the Government emailed the Magistrate Judge's staff for a third time to follow up on the Proposed Continuance Order. This time, the Magistrate Judge's staff responded and informed the Government that the Proposed Continuance Order would be docketed soon. Accordingly, on May 15, 2025, the Magistrate Judge ordered that this action was continued and that the days "from the date of th[e] order through July 30, 2025," would be excluded for purposes of the STA. (ECF No. 11.)

On August 21, 2025, Chief Judge Matthew W. Brann, U.S.D.J. ("Judge Brann"), sitting by designation from the Middle District of Pennsylvania, held that Ms. Habba had been unlawfully performing the functions and duties of that office since July 1, 2025. *See United States v. Giraud*, 795 F. Supp. 3d 560, 568 (D.N.J. 2025), *aff'd*, 160 F.4th 390 (3d Cir. 2025). Judge Brann thus disqualified her and anyone she supervised "from participating in any ongoing cases." *Id.* However, Judge Brann stayed the disqualification order pending the final disposition of any direct appeal by the Government. *See id.* at 607.

[1] Citations to "Gov't Ex." refer to the exhibits attached to the Government Opposition Brief at ECF Nos. 58-1–3. Citations to "Def's Ex." refer to the exhibits attached to Pena's Motion to Dismiss at ECF Nos. 52-3–8.

On August 27, 2025, a grand jury returned an Indictment (the "Initial Indictment") against Pena and Jaramillo, charging them with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and three counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. (ECF No. 13.) The Initial Indictment contained three signatures: (1) the grand jury Foreperson's; (ii) Ms. Habba's (via Special Prosecutions Division Chief Ronnell L. Wilson); and (iii) Assistant United States Attorney ("AUSA") Andrew M. Trombly's. (*Id.*)

On September 10, 2025, Defendants moved to disqualify Ms. Habba and the assigned AUSAs from this case and sought discovery regarding Ms. Habba's role in obtaining the Initial Indictment. (ECF Nos. 20, 22.) This case was then transferred to Judge Brann pursuant to Chief Judge Michael A. Chagares's July 28, 2025 Designation Order. (ECF Nos. 23–24.)

On September 11, 2025, Pena filed a Motion to Dismiss the Indictment under the STA. (ECF No. 25.) After Judge Brann directed the Government to respond to the disqualification motion (ECF No. 26), the Government filed an Opposition on October 10, 2025, while noting that the STA motion fell outside the scope of the Designation Order and had to be resolved by this Court (ECF No. 28).

On December 1, 2025, the Third Circuit affirmed Judge Brann's order disqualifying Ms. Habba as the United States Attorney. *See United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025). A week later, Ms. Habba left the United States Attorney's Office for a position within the Office of the Attorney General at the Department of Justice ("DOJ"). *See United States v. Naviwala*, 825 F. Supp. 3d 451, 466 (D.N.J. 2026). That same day, the Attorney General designated three DOJ officials to oversee the work of the United States Attorney's Office. *See id.* at 466–67.

On December 15, 2025, Judge Brann denied Defendants' disqualification motions as moot and transferred the matter back to this Court. (ECF No. 32.) On December 22, 2025, this Court

held a status conference and gave Defendants until January 12, 2026 to file any motion challenging the new authority structure of the United States Attorney's Office. (ECF Nos. 33, 34.) By then, other defendants in other cases had raised such challenges, and Judge Chagares again designated Judge Brann to resolve those challenges. On January 12, 2026, Pena moved to disqualify the United States Attorney's Office from prosecuting the case and to dismiss the Initial Indictment with prejudice. (ECF No. 35.) Jaramillo joined Pena's Motion a day later on January 13, 2026. (ECF No. 37.) This Court then transferred the case back to Judge Brann pursuant to Judge Chagares's December 18, 2025 Designation Order. (ECF Nos. 36, 39.)

On January 21, 2026, Judge Brann stayed this case pending the resolution of challenges to the United States Attorney's Office in other unrelated cases. (ECF No. 40.) Ultimately, Judge Brann concluded that the new leadership structure of the United States Attorney's Office violated both the Federal Vacancies Reform Act ("FVRA") and the Appointments Clause. *See Naviwala*, 825 F. Supp. 3d at 522, 530. As with Ms. Habba, Judge Brann disqualified the three DOJ officials from participating in and supervising any AUSAs who were leading the criminal prosecutions involving the defendants in those cases. *Id.* at 531.

On March 23, 2026, the District Court appointed Robert Frazer ("Mr. Frazer") to serve as United States Attorney.

On March 30, 2026, the Government informed Judge Brann that it would obtain a superseding indictment in this case, which the Government believed would moot Defendants' then-pending authority challenges. (ECF No. 43.) On May 4, 2026, the grand jury returned the Superseding Indictment, which contains the same charges that were in the Initial Indictment. (ECF No. 44.) Judge Brann then ordered the parties to submit a joint status report to address whether any issues in the pending motions required his resolution. (ECF No. 45.) The parties then

submitted a joint letter requesting that this case be returned to this Court for further proceedings. (ECF No. 46.) On May 26, 2026, Judge Brann obliged and transferred this matter back to this Court. (ECF No. 47.)

This Court then held an arraignment on the Superseding Indictment on June 9, 2026. (ECF No. 48.) On June 15, 2026, this Court entered a scheduling order requiring Defendants to "file any renewed motions to dismiss under the Speedy Trial Act or challenging the authority of the United States Attorney's Office." (ECF No. 49.) That same day, this Court entered a continuance order, excluding time under the STA from June 15, 2026 to December 1, 2026. (ECF No. 50.)

On June 23, 2026, Pena filed the present Motion to Dismiss this case with prejudice, arguing that the Government violated the STA and the Appointments Clause. (ECF No. 52.) The next day, Jaramillo joined the Motion with respect to Pena's Appointments Clause argument. (ECF No. 53.) The Government opposed the Motions on July 28, 2026. (ECF No. 58.) Along with the Government's Opposition Brief, the Government submitted a letter from Mr. Frazer ratifying the Initial Indictment to the grand jury and the signatures of Ms. Habba and AUSA Trombly. (Gov't Ex. D.)

On July 30, 2026, this Court ordered oral argument to take place on August 6, 2026, limited to the issue of whether the Government violated the STA. (ECF No. 59.) On August 5, 2026, Pena filed a Reply in support of his Motion solely on the issue of whether the STA was violated. (ECF No. 60.) The Court then held oral argument on August 6, 2026. (ECF No. 61.) On August 18, 2026, Pena filed a second Reply in support of his Motion on the issue of whether the Appointments Clause was violated and responding to questions raised at oral argument. (ECF No. 65.) On August 24, 2026, Jaramillo filed a Reply in support of his Motion. (ECF No. 68.)

## II. SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this case pursuant to 18 U.S.C. § 3231.

## III. DISCUSSION

In Pena's Motion, he argues that the Superseding Indictment should be dismissed because the Government violated the STA by failing to indict Pena within thirty days of his arrest. (Moving Br. at 8–9.) He further argues that the dismissal should be with prejudice. (*Id.* at 9–18.) Both Pena and Jaramillo also argue that the Superseding Indictment should be dismissed with prejudice because of the Appointments Clause violations. (*Id.* at 19–20.)

As will be explained below, the Court holds that the April 23 Email to the Magistrate Judge's staff constituted a "pretrial motion" that tolled the thirty-day time limit under the STA. Accordingly, Mr. Pena was indicted within thirty days of his arrest. Moreover, the Government's Superseding Indictment obtained under the authority of Mr. Frazer ratified any potential Appointments Clause violations that infected the prior indictment.

### A. SPEEDY TRIAL ACT

The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The STA was enacted "to give effect to the Sixth Amendment's speedy trial guarantee by setting time limits within which trials must begin." *United States v. Bailey-Snyder*, 923 F.3d 289, 294 (3d Cir. 2019) (citing *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 (3d Cir. 1988)). Pursuant to this statute, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).

However, the STA excludes certain periods of delay when computing the amount of time that has passed. 18 U.S.C. § 3161(h); *see also United States v. Ravelo-Santos*, Cr. No. 24-490, 2025 WL 1260855, at *4 (D.N.J. April 30, 2025) ("When calculating the date by which the Government must file an indictment or information, certain periods of delay are excludable under the STA."). In other words, certain events or occurrences "stop" the thirty-day speedy trial clock. Relevant here, the STA excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). The Supreme Court has held that this subsection excludes time in two situations. *See Henderson v. United States*, 476 U.S. 321, 329 (1986). The first situation, not applicable here, arises when a pretrial motion requires a hearing. *See id.* In that case, subsection (D) "on its face excludes the entire period between the filing of the motion and the conclusion of the hearing." *Id.*

The second category involves pretrial motions that require no hearing and that result in "prompt disposition." *Id.* As explained by the Supreme Court, "the promptness requirement was 'intended to provide a point at which time will cease to be excluded, where motions are decided on the papers filed without hearing.'" *Id.* (quoting S. Rep. No. 96-212, at 34.) The "point at which time will cease to be excluded" is limited by subsection (H), "which permits an exclusion of 30 days from the time a motion is actually 'under advisement' by the court." *Id.* Stated differently, a court may only exclude up to thirty days for a pretrial motion that does not require a hearing. *Id.*; *see also United States v. Adams*, 36 F.4th 137, 148 (3d Cir. 2022) ("[I]f the district court chooses to resolve the motion without holding a hearing, the clock starts ticking a maximum of thirty days after it has 'receive[d] all the papers it reasonably excepts' from the parties."); *United*

*States v. Noble*, 509 F. Supp. 3d 399, 409 (W.D. Pa. 2020) (noting that the Third Circuit has adopted the thirty-day limitation for a motion to be under advisement).

Relatedly, the Third Circuit takes a liberal approach when determining what qualifies as a "pretrial motion." *See United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) (holding that an "informal request for relief" could be considered a motion under the STA). Indeed, a "motion generally means an application made to a court or judge for purpose of obtaining a rule or order directing some act to be done in favor of the applicant." *Melendez v. United States*, 518 U.S. 120, 126 (1996) (citation modified). To that end, the Third Circuit has held that a broad range of requests for relief, including a motion for continuance, were pretrial motions for purposes of the STA. *See Arbelaez*, 7 F.3d at 347; *United States v. Claxton*, 766 F.3d 280, 293 (3d Cir. 2014) (holding that extensions of time to file responses and objections to pre-sentence reports, notices of unavailability, motions to continue status conferences, requests for hearings, and motion to extend the time to file pretrial motions, were all "pretrial motions" that tolled the clock under the STA). Moreover, it is the substance of the request, rather than the form of the request, that determines what qualifies as a pretrial motion. *See Arbelaez*, 7 F.3d at 347 (stating that a letter, oral request, or telephone call to the court could be considered a "motion" under the STA).

1. The Time Between Arrest and the Initial Indictment

In the present matter, Pena was charged, by Complaint, on January 31, 2025, and arrested on those charges on February 5, 2025. (ECF Nos. 1, 4.) The same day as his arrest, Pena was brought before the Honorable Jessica S. Allen, U.S.M.J. for an initial appearance. (ECF No. 4.) On February 6, 2025, the Magistrate Judge entered a continuance order excluding time under the

STA until April 30, 2025. Thus, at this point, zero days had burned off the speedy trial clock. [2] *See* Fed. R. Crim. P. 45(a)(1)(A) ("[E]xclude the day of the event that triggers the period."); *United States v. Martinez*, 75 F. Supp. 2d 360, 364 (D.N.J. 1999) ("First, 'day one' of the clock begins the day after the trigger event.").

The Magistrate Judge entered the next continuance order on May 15, 2025. (ECF No. 11.) This order excluded from the STA the time from May 15, 2025 to July 30, 2025. (*Id.*) Mr. Pena was subsequently indicted on August 27, 2025. (ECF No. 13.) Accordingly, at a minimum, twenty-seven days burned off the speedy trial clock (from July 31, 2025 through August 26, 2025).

Pena first argues that Initial Indictment was obtained outside of the thirty-day speedy trial clock window because the fourteen days between May 1, 2025 to May 14, 2025 were not tolled under the STA. (Moving Br. at 8–9.) According to the Government, however, the April 23 Email to the Magistrate Judge's staff attaching the Proposed Continuance Order was a "pretrial motion" that tolled the speedy trial clock. (Opp'n Br. at 10.) Pena contends that the April 23 Email did not toll the speedy trial clock because the Proposed Continuance Order was not filed on the court's docket for adjudication, and even if it was, it was not a "pretrial motion" because it did not present the court with a dispute or a request for dismissal. (Reply I at 2–3.)

As an initial matter, Third Circuit precedent rejects Mr. Pena's narrow interpretation of what constitutes a pretrial motion. As further explained below, a pretrial motion is one that requires the court's intervention. *See United States v. Villalobos*, 560 F. App'x 122, 126 (3d Cir. 2014). The Proposed Continuance Order necessarily sought the court's intervention because it requested that the Magistrate Judge make certain findings and to exclude time under the STA.

[2] Mr. Pena contends that one day burned off the clock (February 5, 2025 to February 6, 2025). (Moving Br. at 3.) However, whether one day or zero days burned off the clock has no bearing on whether the STA was violated in this case.

Moreover, paragraph one of the Proposed Continuance Order explicitly states that it was a "joint application" between the Government and Pena. That language makes it clear that the Government and Pena were requesting the Court to take certain action in this case.

Indeed, the Third Circuit's decision in *Arbelaez* explicitly found that a motion for a continuance was a pretrial motion for purposes of the STA. *See Arbelaez*, 7 F.3d at 348. The fact that the Proposed Continuance Order was a "joint application" and unopposed does not change the analysis. As this Court explained at the August 6, 2026 hearing, a motion for a continuance that is consented to by all parties, such as the one here, still requires a court to act and make certain findings and issue orders. Simply because a proposed order is made jointly or unopposed does not mean that a court will grant the parties' request, and there have been several occasions where this Court has limited, modified, or denied a joint request for a continuance. Put simply, even joint motions require court intervention. Accordingly, the Proposed Continuance Order is a "pretrial motion" for purposes of the STA.

Mr. Pena's reliance on *United States v. Adams* and *United States v. Brown* is unpersuasive. (Reply I at 2–3; Reply II at 3–4.) In *Adams*, the Third Circuit discussed whether a motion in limine filed pretrial constituted a "pretrial motion" under the STA. 36 F.4th at 147–151. There, the Third Circuit distinguished motions in limine that the district court would resolve pretrial and those that the district court would reserve judgment on until trial, with the former being "pretrial motions" under the STA and the latter not. *Id.* at 151. Nothing about the Third Circuit's opinion in *Adams* alters the longstanding view that a "pretrial motion" under the STA is one that "would require district court intervention" pretrial. *Arbelaez*, 7 F.3d at 348 n.4. To the contrary, *Adams* supports the view the Proposed Continuance Order tolled the STA because it required court intervention pretrial, as opposed to court intervention at trial.

In *Brown*, the Eleventh Circuit held that a "Motion for Determination of Speedy Trial Status and/or Trial Setting" was not a "pretrial motion" under the STA. 285 F.3d 959, 961 (11th Cir. 2002). In reaching that conclusion, the Eleventh Circuit stated that it "served the function of the status reports required by the local rule" and was simply "a reminder to the court to set a timely trial date." *Id.* Of course, the Eleventh Circuit is not binding on this Court and Third Circuit precedent has already established that a motion for a continuance is a pretrial motion under the STA. In any event, *Brown* is distinguishable because a "status report" is not equivalent to a joint application for a proposed continuance order — the former does not require court intervention whereas the latter does. *See Arbelaez*, 7 F.3d at 348.

Nonetheless, the fact that the Proposed Continuance Order is a "pretrial motion" does not end the Court's analysis. Rather, the Court must determine whether the April 23 Email to the Magistrate Judge's staff attaching the Proposed Continuance Order means that it was "filed" with the Court. *See* 18 U.S.C. 3161(h)(1)(D) (stating that period of delay will be excluded from the time of "the filing of the motion"). The Third Circuit's decision in *Arbelaez* and the Federal Rules of Criminal Procedure provide helpful guidance.

In *Arbelaez*, a defense counsel wrote a letter to the judge requesting a continuance for trial on November 15, 1991. 7 F.3d at 345–46. The judge then received and responded to that letter on November 18, 1991. *Id.* at 346. The Third Circuit tolled the STA clock as of November 18, the date of service, but went on to write that the clock may have actually been tolled earlier. *Id.* at 346 n.2. Specifically, the Third Circuit wrote that pursuant to the Federal Rules of Criminal Procedure, the date of service was arguably the date the letter was mailed, not when it was received by the judge. *Id.* However, the Third Circuit accepted November 18 as the date of service because the record did not indicate when the letter was actually mailed and the Government conceded that

the date of service was November 18. *Id.* Thus, this Court reads the Third Circuit's decision in *Arbelaez* as indicating that the Federal Rules of Criminal Procedure will govern whether and when a motion is filed with the Court.

Federal Rule of Criminal Procedure 49 governs the service and filing of papers. Under this rule, a document may be filed by delivering it "to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk." Fed. R. Crim. P. 49(b)(2)(B)(ii). In other words, a judge may agree to accept a document for filing. *Id.* Rule 49 also states that "service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served." Fed. R. Crim. P. 49(a)(3)(B).

Here, the April 23 Email to the Magistrate Judge's staff "filed" the Proposed Continuance Order for purposes of the STA. It is without dispute that many federal judges within the District of New Jersey allow either the Government or a defendant to email their staff a motion for a continuance, rather than having to file them on the Court's electronic docket. This is a routine practice within the District to benefit the Government and defendants as a courtesy to the parties. Based on the record before this Court, it is clear that the Magistrate Judge participates in this practice. Here, the Government, with Pena's consent, emailed the Proposed Continuance Order to the Magistrate Judge's staff. At no point did Pena object to this method or suggest that the Magistrate Judge should not accept the Proposed Continuance Order because it was sent via email, rather than filed on the electronic docket. Indeed, Pena's counsel was a recipient of the email and also signed the joint application consenting to the proposed continuance order. The Government then followed up with the Magistrate Judge's staff on April 28 and May 15, indicating that the Government believed its email was a proper method for filing the Proposed Continuance Order.[3]

[3] At oral argument, the Court questioned the Government on why it would need to follow up with the Magistrate Judge's staff at all if the April 23 Email and Proposed Continuance Order tolled the speedy trial clock. Meaning, there

This view is further reinforced by the fact that on May 15, the Magistrate Judge's staff replied to the follow-up email and informed the Government that it would docket the motion. Following that reply, the Magistrate Judge entered the May 15 continuance order. At no time did the Magistrate Judge indicate that the email was somehow deficient or the improper format for either making or filing such a joint application. The foregoing events make clear that the Magistrate Judge accepts for filing motions for a continuance that are emailed to his staff. And given that service of the pretrial motion was complete upon transmission, and that the record reflects that the Magistrate Judge's staff received the April 23 Email, the speedy trial clock was tolled as of April 23, 2025. *See Arbelaez*, 7 F.3d at 346 n.2.

In a case analogous to this one, another district court reached the same conclusion. *See United States v. Golston*, Cr. No. 23-362, 2024 WL 149603, at *2 (S.D.N.Y. Jan. 12, 2024). There, on June 22, 2023, the Government emailed a magistrate judge a request for a continuance of the preliminary hearing. *Id.* The magistrate judge never ruled on that request, however, and the defendant was ultimately indicted on July 19, 2023. *Id.* The defendant subsequently moved to dismiss the indictment, arguing that the STA was violated because the Government failed to indict him within thirty days of his arrest. *Id.* In opposition, the Government argued that the June 22 continuance request tolled the speedy trial clock. *Id.* The district court agreed, concluding that the continuance application was a pretrial motion within the meaning of the STA, and, therefore, that a period of up to thirty days was excludable. *Id.* at *3. The district court also rejected the defendant's argument that the continuance request was not "filed" because it was an "ex parte

---

was no need to follow up if the Government believed at the time that the email itself was sufficient to toll the speedy trial clock. Nonetheless, regardless of whether the Government was aware at the time it sent the April 28 Email that the speedy trial clock was tolled, the law applies the same nonetheless. Nothing in this decision, however, precludes the U.S. Attorney's Office from revisiting whether it should continue this practice in order to avoid similar STA challenges in the future.

email request." *Id.* The court reasoned that, even if the request was improperly filed, that it was nonetheless "a pending motion in the Speedy Trial Act sense." *Id.* (quoting *United States v. Louis*, 814 F.2d 852, 857 (2d Cir. 1987)).

The facts before this Court are even stronger to support the conclusion that the Proposed Continuance Order was a pretrial motion that was filed via the April 23 Email. Here, unlike the request in *Golston*, the April 23 Email was not *ex parte* and included Pena's lawyer. Moreover, there are no facts in *Golston* which suggest that the judges in the Southern District of New York or the specific assigned magistrate judge routinely accepted for filing motions for continuances sent via email. And, like the defendant in *Golston*, the April 23 Email was sent with the consent of Pena and the Proposed Continuance Order was a "joint application." In other words, the request for a continuance was not only the Government's, but it was also Pena's. Accordingly, as explained above, the April 23 Email and Proposed Continuance Order was a pretrial motion that was filed as of April 23, 2025. A holding otherwise would not only be contrary to the law, but would also provide Pena with an unwarranted windfall. This Court will not grant such a reward to Pena under these circumstances.

In sum, the Court holds that the speedy trial clock was tolled for a presumptive thirty days when the Government emailed the Proposed Continuance Order to the Magistrate Judge's staff on April 23, 2025.[4] Because the period from May 1, 2025 to May 14, 2025 falls within the thirty-day

---

[4] There is Supreme Court and Third Circuit precedent that suggests that for "simple or routine" motions, the period of "prompt disposition" should be "considerably less than 30 days." *Henderson*, 476 U.S. at 329; *United states v. Felton*, 811 F.2d 190, 197 (3d Cir. 1987). However, because Pena does not make that argument, the Court need not address it. Nonetheless, the Court has not found any case in which a court has held that "prompt disposition" means disposition within less than thirty days. To the contrary, courts have rejected arguments by defendants to shorten the thirty-day window for prompt disposition. *See United States v. Wheeler*, 746 F. Supp. 3d 159, 162 (D.D.C. 2010) (rejecting argument that the speedy trial clock should have been tolled, pending the government's continuance motion, for only seven days instead of thirty); *Golston*, 2024 WL 149603, at *3 ("[T]he [STA] provides only a uniform thirty-day window for all motions not requiring a hearing."). And, at least in this case, where the Proposed Continuance Order was a joint application made by Pena and the Government, and the Government repeatedly followed up on its status, it would be inequitable to shorten the thirty-day window and contrary to the goals of the STA.

window for a motion's "prompt disposition," that time is properly excluded from the STA. Thus, after considering all the properly excluded time, Mr. Pena was indicted within thirty days of his arrest and there was no violation of the STA.

2. <u>The Time Between Arrest and the Superseding Indictment</u>

Defendants also argue that the Initial Indictment was "invalid" because it was signed by Ms. Habba and therefore the speedy trial clock ran until the Superseding Indictment was returned on May 4, 2026. According to Defendants, the Initial Indictment was returned after Ms. Habba was found to be unlawfully serving as the U.S. Attorney, rendering the Initial Indictment void because the attorneys for the Government who signed the Initial Indictment did not have the authority to do so. (Reply II at 8–12.) In its Opposition, the Government argues that the Initial Indictment, even if invalid, tolled the speedy trial clock. (Opp'n Br. at 11.) Moreover, the Government contends that even though Ms. Habba did not have the lawful authority to sign the Initial Indictment, the AUSA who also signed it did. (*Id.* at 15.) And, in any event, the Government argues that the Initial Indictment is voidable rather than void, meaning that Mr. Frazer could subsequently ratify the Initial Indictment and cure the prior deficiencies. (*Id.* at 15–16.)

Section 3161(b) provides that an "indictment returned by a grand jury stops the thirty-day arrest-to-indictment time period." *United States v. Perez*, 845 F.2d 100, 102 (5th Cir. 1988). And as explained by the Supreme Court, the grand jury is "a constitutional fixture in its own right." *United States v. Williams*, 504 U.S. 36, 47 (1992). It is therefore not assigned to "any of the branches" of government described in the first three Articles of the Constitution. *Id.* Indeed, the "grand jury, like the petit jury, acts as a vital check against the wrongful exercise of power by the State and its prosecutors." *Campbell v. Louisiana*, 523 U.S. 392, 399 (1998). Moreover, the function of an indictment serves three purposes: (1) it puts the defendant on notice of the exact nature of the charges he would be required to defend against; (2) it protects him from a second

trial on the same offense had he been acquitted; and (3) it was returned by an independent body upon a finding of probable cause. *See United States v. Rabb*, 680 F. 2d 294, 296 (3d Cir. 1982). To that end, the STA's thirty-day arrest-to-indictment period is served by "forc[ing] the Government to elect to proceed against the arrestee or to release him." *Perez*, 845 F.2d at 102.

Despite Ms. Habba unlawfully serving as the U.S. Attorney when the Initial Indictment was returned, the Initial Indictment nonetheless still served to toll the speedy trial clock's thirty-day arrest-to-indictment requirement. The Third Circuit's decision in *United States v. Rabb* and the Fifth Circuit's decision in *United States v. Perez* are instructive. In *Rabb*, the Third Circuit held that an indictment returned by a grand jury whose term had expired was nevertheless sufficient to comply with the STA's thirty-day speedy trial clock. *Rabb*, 680 F.2d at 295. The Third Circuit reasoned that the speedy trial provisions were a "congressional directive for the orderly conduct of criminal proceedings," and would not serve as a bar to superseding indictments that were later returned because of the defects present in that case. *Id.* at 296–97. Similarly, in *Perez*, a grand jury returned an indictment against the defendants after its term had expired. 845 F.2d at 101. The Fifth Circuit held that the indictment still tolled the STA's timing provisions because the indictment put the defendants on notice of the charges against them, protected them from a second trial on the same offense, and was returned by an independent body upon a finding of probable cause. *See id.* at 103. The court further reasoned that "Section 3161(b) applies to 'any' indictment, including one that subsequently is found to be defective or invalid." *Id.* at 102.

Likewise, the Initial Indictment in this case, even if defective, nonetheless stopped the speedy trial clock. That is because the Initial Indictment served the essential functions of an indictment by putting Pena on notice of the exact nature of the charges against him, protected him from a second trial on the same offense if he was acquitted, and was returned by an independent

body upon a finding of probable cause. *See Perez*, 845 F.2d at 103. Thus, the underlying purposes of the STA were served when the Initial Indictment was returned by the grand jury.

Pena argues that the Government was acting in bad faith when it obtained the Initial Indictment because it was returned after Judge Brann held that Ms. Habba was not lawfully serving as the U.S. Attorney. According to Pena, this bad faith on the part of the Government distinguishes this case from the Third Circuit's decision in *Rabb* and the Fifth Circuit's decision in *Perez*, which involved unknown and unintentional defects in the grand jury process. (Reply II at 17.) Judge Brann stayed his decision, however, meaning that when the Initial Indictment was returned, his order finding Ms. Habba to be unlawfully serving as the U.S. Attorney was without any legal force. *See Nken v. Holder*, 556 U.S. 418, 428–29 (2009). Moreover, as explained below, the Government could have reasonably relied on caselaw which has held that an indictment only needs to be signed by an AUSA, regardless of whether the U.S. Attorney is lawfully serving in that position.

Pena also contends that the Government should have sought a superseding indictment as soon as the Third Circuit upheld Judge Brann's decision, and that the Government's decision not to "smacks of bad faith." (Reply II at 18.) However, the Court is aware that there is a line of cases in which courts have held that an Indictment signed by an AUSA is valid even if the supervising U.S. Attorney is serving unlawfully because an AUSA derives his or her authority from the Attorney General. *See, e.g. United States v. Ndissi*, Cr. No. 25-143, 2026 WL 318836, at *6 (D. Vt. Feb. 5, 2026) (holding that "a single AUSA's signature" is all that is needed for an indictment to be valid); *United States v. Dillard*, Cr. No. 24-47, 2026 WL 560356, at *7 (E.D. Va. Feb. 27, 2026) ("[A]n Assistant United States Attorney does not lack the power to prosecute in the absence of a legally appointed United States Attorney."). In other words, the Government had reason to

believe that it was not necessary to obtain a Superseding Indictment because the Initial Indictment was signed by AUSA Trombly and remained valid at the time of Mr. Frazer's appointment.

The Court, however, echoes Judge Brann's concern with this line of cases, which all appear to rely on dicta from two opinions from other circuits and fail to engage in any meaningful textual analysis of the relevant statutes or DOJ regulations. *See Naviwala*, 825 F. Supp. 3d at 528–29 ("The idea that the Attorney General implicitly delegates full prosecutorial authority to AUSAs without any clear limits or defined supervisory structure strikes me as problematic to say the least."). That being said, this Court need not conduct any analysis of this legal issue because even if the Government is wrong, there is no bad faith. When considering the Government's reliance on what could be deemed as persuasive caselaw, this Court concludes that the Government was not acting in bad faith by relying on an indictment that was signed by AUSA Trombly, which the Government could have arguably believed was sufficient for an indictment to be valid under existing caselaw. The Government's decision to seek a superseding indictment later does not change this analysis. Their decision to seek a superseding indictment could be made for a variety of reasons, including simply in abundance of caution in case a court determined that the Initial Indictment was invalid.

In sum, the thirty-day timing provision of the STA was not violated because the Initial Indictment was returned by an independent grand jury and served the functions of the STA's timing provisions by putting Pena on notice of the charges against him, protecting him from a second trial on the same offense if he was acquitted, and was returned by an independent body upon a finding of probable cause. Accordingly, based on the unusual facts in the record, this Court

concludes that Government complied with the STA's thirty-day from arrest-to-indictment timing requirement.[5]

**B. THE APPOINTMENTS CLAUSE**

Defendants argue that the Superseding Indictment should be dismissed because the Government violated the Appointments Clause. (Moving Br. at 19–20.) They assert that because of these violations, this Court should exercise its inherent authority to dismiss the Superseding Indictment with prejudice. (*Id.*)

As an initial matter, the Court notes that Defendants do not argue that the Superseding Indictment is invalid. Nor could they, having conceded that Mr. Frazer "was lawfully appointed the United States Attorney for the District of New Jersey." (Moving Br. at 8.) To the extent Defendants argue that the initial indictment signed by Ms. Habba taints the Superseding Indictment, "case law clearly establishes that an Appointments Clause violation does not irrevocably poison a proceeding" or "cannot be remedied by a new, proper appointment." *United States v. Naviwala*, Cr. No. 24-00099, 2026 WL 1031149, at *5–6 (D.N.J. April 16, 2026). As Judge Brann went on to hold in *Naviwala*:

> Courts of Appeals across the country have repeatedly held that if a lawfully appointed official ratifies his predecessor's action and does so in accordance with the law, that ratification may remedy a defect arising from the decision of an improperly appointed predecessor. Courts have gone so far as to hold that a ratification cures any initial Article II deficiencies, even if the subsequent review was nothing more than a rubberstamp.

*Id.* (citation modified).

---

[5] To be clear, the Court expresses no opinion on the validity of an Indictment signed by an AUSA when the supervising U.S. Attorney is serving unlawfully, beyond its capacity to satisfy the timing requirements of the STA for the reasons stated herein.

Here, Mr. Frazer's subsequent ratification of the Initial Indictment and the grand jury's return of the Superseding Indictment remedied any Appointments Clause violations that may have affected the initial grand jury proceedings. *See Naviwala*, 2026 WL 1031149, at *5. That is because "[t]he proper remedy for an Appointments Clause violation is to purge the tainted proceedings," *id.* at *6, which indisputably happened in this case once the Superseding Indictment was returned. Indeed, the only proceeding that could have been tainted was the initial grand jury presentation, which was certainly cured by the independent review and approval of Mr. Frazer and the grand jury's return of the Superseding Indictment. Accordingly, the Superseding Indictment will not be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court will **DENY** Defendants' Motions to Dismiss. (ECF Nos. 52, 53.) An appropriate Order will follow.

Date: September 3, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**